I understand there's a motion to cite additional authority that was filed by the state. Did you receive a copy? And no objection was filed, correct? Okay, that motion will be granted. Are you otherwise ready to proceed? Good morning again, your honors, counsel. May it please the court. My name is Erin Johnson with the Office of the State Appellate Defender and I am here on behalf of the defendant appellant Chad Bardsley. Now Mr. Bardsley is here on behalf of the State Appellate Defender. The issue for reviewing this case is that the state failed to prove Mr. Bardsley guilty beyond reasonable doubt, where the evidence presented by the state demonstrated that the defendant was justified in his conduct. He was trying to avoid unwanted medical treatment. Now the evidence presented, and just to summarize it very quickly, the evidence presented by the state's witness was the security guard, Kenneth Clean, who worked for Santegra Hospital. Mr. Clean testified that Mr. Bardsley was brought in by emergency medical personnel on an EMS cart handcuffed, but then he was removed from both the cart and handcuffs and placed in a regular room where he was unrestrained. He remained in that room for several hours, and then a doctor went in to stitch up a wound to Mr. Bardsley's hand. At that point, Mr. Bardsley refused stitches. After Mr. Bardsley refused the stitches, a doctor went in and stitched up Mr. Bardsley's hand. While Mr. Clean was restraining Mr. Bardsley, Mr. Bardsley, according to Clean, said this is not right. You can't do this. I need to go home. Mr. Bardsley, after being placed in these straps where his wrists and ankles were restrained, then bit at the straps until eventually the left strap came loose. Mr. Clean went to reapply the strap, and at that point, Mr. Bardsley attempted to bite him. Mr. Clean testified that Mr. Bardsley had made it abundantly clear that he did not want to be there. Mr. Clean also testified that after Mr. Bardsley almost bit him, he then called Woodstock police to file a complaint. So in finding Mr. Bardsley guilty, the trial court ruled, first when the court was making decisions, the first statement the court said, did the defendant have lawful authority? And then the court said, I can't see any lawful authority for the defendant's actions. But that was wrong. The defendant did have lawful authority. Did he raise like a justification defense? Did the defendant raise an affirmative defense at trial? There was nothing filed. This is obviously a misdemeanor, so there didn't necessarily need to be anything filed. If there were a jury trial, would he have had to file a jury instruction raising that affirmative defense? I mean, certainly if this had been a jury trial, the defense counsel should have asked for a jury instruction. But this was a bench trial. The court at bench trial is presumed to know the law. And I think the issue here is that when we look at the case law, the defendant's entitled to any defense that's however slight the evidence is available from the evidence. And it's the state's evidence that's presented that really outlines the defendant's defense. Because we have the personnel, Mr. Clean's personnel from the hospital saying, yeah, he didn't want stitches, so we restrained him. He said, I don't want to be here. I don't want this. And then we continued to restrain him. So it's clear from the state's witness that the defendant was acting to prevent this unwanted medical treatment. And did he argue this down below? Defense counsel argued that the defendant was trying to get out of the restraints. So I think that the issue was before the trial court that the defendant was trying to escape these restraints. Trial counsel below did not specifically say he was trying to avoid a medical battery. But he did say he was trying to get out of the restraints. I think defense counsel — But how do we address that at this level when it wasn't raised below? Well, I think that the point — reasonable doubt is always in play. And whether or not the evidence is sufficient is always in play. But also, the whole purpose behind waiver is to make sure that the trial court has a full opportunity to consider these issues. And in this case, trial counsel made — I mean, maybe not articulating it the same way I'm articulating it, but trial counsel did say the defendant's trying to escape these restraints. For what purpose? Because he didn't want medical treatment. Did he say that? I don't believe that he stated that he didn't want — I mean, the trial counsel brought out the fact that counsel — sorry, I'm getting a little tangled here. Trial counsel brought out the fact that the defendant did not want medical treatment in his questioning, and he did refer to the fact that the defendant didn't want to be restrained. I'm not certain that I heard him say unwanted medical treatment in that way. But I think that what's important here is that the trial court, when it made its ruling, the first thing on R110, the trial court says, did the defendant act without lawful authority? I can't see any lawful authority for the defendant's actions. So clearly, this issue of whether or not the defendant had the ability to get out of these restraints was before the trial court. And so I do think it's proper for this Court to consider that when you look at the evidence presented by the State, the defendant had made it clear, and defense counsel brought out the testimony, that it was abundantly clear that he didn't want the stitches, that he did not want to be restrained. So I think that it is able to be addressed by this Court. And it should be found that the defendant was justified in his actions because he was defending himself against a medical battery. Could it be argued, and I think that's how it was argued down below, that the defendant was just — was he drunk? The defendant was intoxicated, but the fact is that — So he was drunk, and he was just pulling drink, and he was just struggling and pulling, and maybe in his mind — I mean, you're making a leap that in his mind he was saying, stop, I don't want stitches, or I don't want any medical treatment. Well, I don't think it's a leap because the testimony of Kenneth Clean, the security officer, was the defendant was in the room for two hours. Then on R30, it said that he testified that the doctor went in to stitch the defendant's hand, and the defendant refused the stitches. At that point, the nurse came to Mr. Clean and told him, you need to restrain this defendant. So he's unrestrained for two hours. It's when he says, I don't want stitches, that they decide to restrain him. And so that's clear that the purpose of restraining him was to give him this medical treatment he did not want. And in terms of the intoxication, certainly intoxication is not a defense to battery or stalls. A person can act knowingly while they're intoxicated. And a necessary corollary to that is if he was conscious and aware enough that he can knowingly, you know, take these actions, he can also say, I don't want this medical treatment. I'm not consenting. Can he say that? Well, again, we have the testimony that he — he said that he made — the defendant testified that he made statements to the nurse about his claustrophobia and why they shouldn't be restraining him. But I would point back to the testimony of Mr. Clean, the security officer. He says that the direct link between when the defendant gets restrained is the doctor wearing the stitch to the defendant's hand. The defendant refused stitches. At that point, they said, you need to restrain him. So it's clear that the issue here was that the defendant was not complying with medical treatment, but he doesn't have to get medical treatment. He does not want — he has an absolute right to refuse this medical treatment. And so this was — sorry. His testimony was that he was biting at the strap because he was claustrophobic and he wanted to get the strap off, right? Right. So he was biting at the strap. He wasn't biting at the guard, correct? That's what he said. That's what the testimony is, that he was, hey, I wasn't biting at the guard. I was biting at the strap. So his defense really then is that it wasn't intentional, right? I wasn't intending to bite him. I was intending to get loose. I think the problem with that is I understand that's the statement the defendant made. The defendant's not a lawyer. That's not a defense. I mean, the problem here is that we have an offense that's knowingly. It doesn't matter whether the defendant was trying to bite the strap or bite Mr. Kleen's hand. So I think that's kind of a false dichotomy that was created in the trial court, that it mattered somehow, whether the defendant was intending to bite the strap or bite the person's hand. But I think as the trial court actually correctly identified, he knew that he was biting. He knew that Kleen was in the area. The defendant never denied either of those two facts. But the very essence of justifiable use of force is that I intend to do this because it's wrongfully applied. That force is being wrongfully applied to me. So, therefore, I am intentionally trying to repel that force. Isn't that right? Well, yes, in theory. But I guess in reality the case law indicates that a defendant's entitled to any defense that's presented in the evidence, even if it's inconsistent with his own testimony. And that's what Leidas says. That's what Beach says. So whether or not the defendant testified that I didn't mean to do that, because we talk about people being beached, which is cited in our brief. We had a defendant who said, well, I wasn't trying to – there were several things. I wasn't trying to push the officers. I did do this one thing. I didn't do this other thing. They said that doesn't matter. It doesn't matter that she testified slightly inconsistently with self-defense because from the witnesses presented by the state, there was evidence of an affirmative defense. And if there's evidence of an affirmative defense, however slight, the defendant's entitled to that defense. And here I don't think it's slight at all. I think the state's witness squarely puts this in focus that the defendant was refusing medical treatment and that's why they restrained him. There's no lawful authority to restrain someone to give them medical treatment they don't want. But the defendant never said that. He said I was biting it. I didn't want to be restrained. He never said I didn't want medical treatment. He said I was claustrophobic and I didn't want to be there. But, again, I would go back to the testimony that Mr. Cleen said that as he was restraining the defendant, the defendant said this is not right. You can't do this. I need to go home. And that's at R32. So it's clear that hospital staff was on notice that the defendant did not want – I mean it's a direct line from when he said I won't get these stitches to then the nurse says we need to restrain him. Then as he's being restrained, he makes statements to the hospital personnel. This is not right. You can't do this. I need to go home. So it's clear that that is – I mean that's the state's evidence. So the state's evidence is what raises this affirmative defense. And the fact that the defendant's testimony, you know, he was focusing on the fact that he didn't want to be restrained because of his claustrophobia. The defendant never said I didn't mind getting – I mean we don't have anything affirmatively the other way where the defendant said I was fine getting stitches. I just didn't want to be restrained. He said I had claustrophobia and I didn't want to be restrained. But it's clear from the state's evidence that that was the issue here. And like as I said, if you look at Leida and Beach, which are cited in our brief, it's clear that the defendant, even if he's slightly inconsistent with self-defense, can still use a self-defense where the evidence – where the evidence supports it. And here the state's evidence supported that the defendant was acting in self-defense. But if you have – if there is evidence of a self-defense or some sort of a defense, if you don't raise it, are you saying it's incumbent upon the trial court to raise that or to infer that defense on behalf of the defendant? Well, because the defendant's entitled to the defense if it's presented, I'm saying that when the court evaluated the evidence, no reasonable trial court could have found the defendant guilty where the testimony was as the testimony came out here that he had refused stitches and then they restrained him and he's trying to get out of these restraints. What page did he refuse stitches? On page – there are 30. The testimony was the defendant was in the room for a couple of hours and then the doctor went in and stitched his hand. He refused the doctor's stitches. In court language, he refused the assistance of the doctor. At that point, the nurse told him to be restrained – or told him. But he never said, I don't want stitches. You said that he said, I don't want stitches. He never said that. Well, certainly the testimony of Mr. Kleen was that when the doctor went in there and stitched his hand, the defendant refused the doctor's assistance. At that point, the nurse instructed Mr. Kleen to restrain the defendant. While the defendant was being restrained, he said, this is not right. You can't do this. I want to go home. And he said when he testified at trial, it was because he was claustrophobic. Is why he didn't want to be in restraints. Yes, that's correct. But again, my argument here is that when we look even just at the state's evidence, the defense is clear. And even if the defendant testifies inconsistently with a self-defense, that doesn't mean he's not entitled to that defense. And I think that it's clear here that this was an unlawful use of force against the defendant. And he had every right to defend himself against this unlawful use of force. And as we've outlined in our brief, knowing interference with a person's right to refuse medical treatment is a medical battery. It is unlawful force. But I think the salient point is that the evidence presented by the state clearly demonstrated the defendant's actions were justified. So no reasonable trier of fact could have found him guilty beyond reasonable doubt. And I think it is important to note that the trial court in pronouncing its ruling said is there any lawful justification? I can't see any lawful justification. The trial court was wrong on the law there. They evaluated whether or not the defendant was justified and found he wasn't. So this was before the trial court. Do you want to comment on the case that the state cited? So that case is a first district case. I actually don't think, first of all, the first district is correct. I mean, the statement is that self-defense is all or nothing. That's not in line with the cases that I've cited from the second district as well as the Supreme Court precedent that a defendant is entitled to argue both accident and self-defense in homicide cases. That's pretty well established. So I don't think the first district is in line with the Supreme Court or with our court. But even assuming that this, I think that it's not on this case, Freeney is not, I guess, on all fours with our case. The problem with Freeney is in Freeney the defendant testified he was being docile. He wasn't doing anything. And then they said you can't raise self-defense. Here the defendant never said he wasn't biting. He said he's biting. I was biting continuously at these straps. So this isn't an accident. I think to try and say, because the whole thing that the state pulls out in their motion is it can't have you do self-defense in an accident. Not only do I think that's not a correct statement of the status of the law, but that's not what we have here. We're not saying it was an accident. No one ever suggested it was an accident. And I think that goes back to the whole idea of intent. It's what the defendant knew, what was he knowingly doing. And the defendant testified clearly. I knowingly was biting. And I knew the security guard was there. So I don't think we have an accidental thing. It's not where the defendant said, oh, I was, you know, having a seizure, or I fell over and fell into the guard. This is not an accident. The question here was whether or not the defendant is justifying. And I think that that's the issue here at the appellate court, that that wasn't what was raised below. Below, he was basically saying it was an accident. I was not biting at the officer. I was biting at the straps. Wasn't he saying that? That is what was said. But, again, I think that's a false dichotomy, because as the trial court ended up deciding, if you know that you're biting and you know someone's there, then you know that you're biting, you can place that person in a reasonable apprehension of battery. It's the same situation if I pick up this pitcher and throw it. I don't have to be intending to hit Justice Jorgensen. But if I do, that's a battery, because it's about knowing action versus intentional action. I understand that. But I guess my struggle, again, sorry, I'm struggling with you today, is, you know, how do you – the state doesn't have an opportunity to rebut whatever defense or whatever you're arguing at the trial court if you bring it upstairs and you change your argument. I mean, how – we talked about equity in the last case. How is that equitable? And I would say I'm not changing the argument, because, again, I think that the point of waiver, the point of all these rules, is that the trial court needs to have a full and fair opportunity to evaluate this. And here, like I said, in R110, the trial court says, is there any lawful authority for what you're doing? I don't see any lawful authority. So the trial court clearly was thinking about this issue of, is there lawful authority? And in terms of, you know, is the state prejudiced in terms of they couldn't present anything, the state's witness is the one that sets up this defense. The state, you know, there's no – and I don't really – I mean, I guess it's hard to speculate what type of evidence could the state have presented to counter the fact that he was restrained for the purpose of medical treatment. Well, what kind of defense could the defendant brought up that he was restrained and he was fighting against medical treatment? Well, and again, I – Wouldn't that have been his burden, and then it shifts to the state? Well, if you look at the case law, as I said in our brief, it actually – the defendant has the burden of bringing up evidence unless the affirmative defense is raised by the state's evidence. And if the affirmative defense is clear from the state's evidence, the defendant doesn't have to bring any evidence of his own regarding that affirmative defense. So, I mean, when we talk about Leida and Veatch, so that's – I mean, no, the defendant doesn't have to present anything if we can say that the defense is clear from the state's evidence. And the issue here is the state's witness clearly testified, you know, he's in this room, he's unrestrained for several hours, and when the doctor goes in to touch his hand, he won't allow the doctor to assist him. They decide to restrain him. He continues to struggle. He says, this is not right, you can't do this, I want to go home. So the state's own witness is admitting he didn't want this treatment we're trying to give him. He wants to go home. We decided to restrain him anyways. I mean, this is – there's no justification for the hospital's actions here. And certainly the issue is that the defendant is entitled to say, well, looking at what the state presented, I was justified in using force to defend myself against this medical battery. So I would say that based on the evidence, no reasonable trier of fact, the evidence presented by the state, no reasonable trier of fact, would have found the defendant guilty beyond a reasonable doubt. And for that reason, we would be asking this court to reverse the court blow. Questions? No. We'll have a chance for a reply. Good morning, Your Honors. My name is Diana Caramel. I'm with the Court Prosecutors. And I have several issues to address. First of all, in my brief at page 5, I cite People v. Brash, which holds that an issue is forfeited if you bring the theory for the first time on appeal and did not raise it in the trial court. And opposing counsels repeatedly referred to the trial judge's statement that the court can't see any lawful authority for trying to bite off the restraints, which is at page 110 in the transcript. Clearly, that is evidence that the theory was not presented to the trial judge. Otherwise, it is a golden opportunity for defense counsel to say, you know, oh, he is resisting medical treatment. You know, that's a justifiable reason for trying to bite off the restraints. You know, if he didn't want to do it at trial, he has an opportunity for a motion to reconsider. So clearly, the issue was not raised in the trial court. And in the trial court, defense counsel had basically two strategies. One was to oppose the charging instrument, which he did at the beginning of his closing argument. And then other than that, his argument was, in fact, that the defendant accidentally bit the or came close to biting the officer when the officer stuck his hand in the restraint. And in particular, part of his argument at page 46, he wasn't lunging at Mr. Klien whatsoever. Mr. Broxley was going towards the strap. Mr. Klien is the one that put his hand in harm's way. A little further down, he had every opportunity to bite Mr. Klien's hand if that's what he wanted to do, but he didn't. He was trying to bite the strap. And this goes to the whole concept of self-defense. And Justice Spence referred to, obviously, read the motion for additional authority and the Frieden case where it says self-defense. It's not self-defense if it's accidental. So clearly in this case, all the defendant's testimony is that he was trying to bite the strap. He was not trying to bite Officer Klien's hand. What is your response to the security officer, the defense's proposition that the security officer basically put into evidence the defendant's unwillingness to get medical treatment? That was one brief statement in a whole context of questions. The evidence is actually that the doctor came in. He was going to stitch the defendant's hand. The defendant didn't want his hand stitched, so the doctor left. And there are no medical people trying to force unwanted treatment on the defendant at the time this happened. What actually happened is that the trial court found that the defendant was a danger to himself and others. And he said that at page 109. And then a little later at sentencing, the judge says, We can't let people who are highly intoxicated out of the hospital until they find out how bad off they are. If they aren't that bad off, then they can release them. I understand that you're a little claustrophobic, and I'm not going to put you in jail about it. And he said that at 116. So basically, I put some of the facts in my brief at pages 10 and 11. But the defendant was intoxicated, which is at the record at 49, 57, 59. He came to the hospital accompanied by the police, R27, 29. He was handcuffed to the gurney when he was brought in, R29 to 30. The nurse, he refused. The doctor stitches. The doctor left. Then the nurse finally asked to put the defendant in restraints because he was out of control. He was arguing, yelling, screaming, trying to get out of bed. That is at R31. So that shows that the defendant was restrained because he was intoxicated and belligerent, not because they were trying to unlawfully give him medical treatment. And then to continue, he was restrained to the bed as part of the hospital procedure for intoxicated and uncooperative patients. That's Officer Cleen's testimony at R30. The defendant testified to freaking out, being claustrophobic, and trying to get out of his restraints at 49 to 50 and 50 to 51. Cleen characterized the defendant as out of control at R27 and 31. The defendant had been he received the hand injury because he'd been playing with a knife, which is at R35 and 34. The knife was taken from his pocket by the security officer when he first came into the hospital. That's at 56 to 57. He had passed out prior to coming to the hospital. That's at R29. And again, the trial court found that the defendant was a danger to himself and others. That's at both 109 and 116. So clearly the reason that the defendant was restrained was because he was belligerent and intoxicated. And in fact, the defense counsel stipulated to that. I can't remember the exact citation to that. But on page 45, he was intoxicated, uncooption, and unruly. But why was he trying to bite at the straps? Because he wanted to get on the straps. He was freaking out, out of control. Apparently some claustrophobia was involved. Was the doctor trying to stitch him at that point? No. The doctor had the defendant came in handcuffs to the gurney. He was taken into room number two, which has Velcro straps attached to the bed, because that's where they take intoxicated, belligerent potential patients. He was not strapped in at that time. The doctor came in. He wanted to stitch the defendant's hand. The defendant apparently didn't want that to happen, so the doctor left. Then it's just the nurse, and she asked the security officer then to restrain the defendant because, again, this is at page 31. He was intoxicated, uncooperative, out of control, arguing, yelling, screaming, and trying to get out of bed. But he wasn't doing that before the doctor went in? Apparently he had been belligerent and uncooperative on the way in. He was apparently maybe not quite as bad. The record isn't clear on that. Did he ever get the stitches? I don't believe there's any evidence that he did. What happened apparently is the doctor left. He was then restrained for approximately an hour and a half, at the end of which the nurse had asked the security officer to go in and adjust his position because his shoulder was up. I can't remember whether both arms were up or to the sides, but they asked them to adjust the straps so the defendant would be more comfortable. The security officer was trying to do that. The defendant continues to try and get out of his restraints. And then when the officer is trying to reattach the strap, the officer testified that the defendant lunged at him and tried to bite him. The defendant, of course, disagrees with that characterization and says that he was trying to bite the strap. The trial court made a credibility finding and found that Officer Cleen's testimony was much more credible than the defendant's, in part attributing that to the defendant's intoxicated state. So there are a multitude of problems with defense counsel's arguments. Do you have any more? Yes. Do you want to comment on Veach and Lida, or Lida, however you pronounce it, as opposed to Freeny? Okay. In Lida and Veach, they're both jury trial cases, so you're going to have jury instructions given to the jurors. So at least he's proposed it in those cases. Right. Well, what I read from that is that they're entitled to present their theory of the case. So here that wasn't done. This theory of the case of refusing medical treatment is not what was presented in the trial court. Their defense counsel is arguing that he accidentally bit the officer when he was trying to get on the straps. So it's not a self-defense because you have to intentionally do the act. Part of self-defense is also the danger of imminent harm. At this point, he's been restrained for like an hour and a half. No one's trying to give him unwanted medical treatment at that point. They're just restraining him until he can be sober enough to be safely released. Freely was bench trial also, right? Yes. That's part of the reason why I chose that case in particular in his bench trial. Right. Thank you. So because he's intoxicated, he can't be released even against medical advice. I think that the trial court is going with what testimony he has, and had they brought up this theory at trial, the state could have perhaps called the nurse who asked Officer Kleen to restrain him to get more information. They could have asked Officer Kleen more questions about the hospital procedure for drunk and belligerent patients, but because this issue wasn't raised in the trial court, the state was not given the opportunity or put on notice to put on more information in this regard. The information that we have is that the hospital procedure with drunk and belligerent patients is to restrain them until it's safe to let them go. I think that's a realistic, very practical thing, because if Mr. Barnsley goes out of the hospital in a drunk and intoxicated state with his knife and cuts himself again or passes out and is hit by a car, he's going to be suing the hospital. Oh, I think he'll be suing the hospital. So, you know, on a practical basis, the judge is entirely correct. You can't let an intoxicated, unsafe person out. And, you know, clearly there's also a question of the defendant came into the hospital accompanied by a police officer who was trying to interview him, and apparently he was uncooperative. So it's unclear from the record that, you know, when he was sober, they wouldn't have called the police to come back and get him for charges. Again, he was brought in because he had passed out prior to getting to the hospital, and he had apparently cut himself by playing with the knife, and they had to remove the knife from his pocket at the hospital. So I think, you know, it's very legitimate that they had health concerns for him. He was belligerent, screaming, profane at the hospital. They had concerns about the safety of their medical personnel. I don't think that the hospital in any way acted inappropriately with this defendant. Do you wish to reply? So, I mean, working backwards from what counsel just said, there's no evidence that the defendant was in police custody. I think it's a bit unfair for the state to suggest that there's something else going on here. The evidence was the defendant was placed in a regular room. How did he get there? He was brought in by EMS, and he was handcuffed to the EMS cart, according to the testimony. But then once EMS dropped him off, he was removed from the handcuffs, released from the cart. There was some testimony about police escorting EMS there, but, again, the evidence was from the state's own witness that he was then placed in a room unrestrained. There's no evidence that there was any police present. In fact, there's evidence to the opposite, because Mr. Kleen testifies that after the defendant attempts, you know, commits the aggravated assault, attempting to bite him, he calls Woodstock police to come to the hospital so he can make a complaint, which certainly then suggests Woodstock police are not there. And, again, the counsel makes the point of saying the defendant had a knife in his pocket. Presumably, if the defendant was in police custody, he wouldn't have had a knife in his pocket when he's at the hospital. So I think there's ample evidence to suggest that there's no police action present here, and certainly nothing was advanced that the defendant was escaping custody or anything of that nature. So it's unfair at this point to say, oh, maybe there's something at play with the police. And going to counsel's argument about the fact the defendant was intoxicated and the trial court statement we can't let people out of the hospital if they're intoxicated, that's just – there's no legal basis that the trial court or the state gives for the idea that if someone's intoxicated, we're allowed to do whatever we want to them medically. There is – But what about the testimony that she cited where the defendant – the doctor left the room. No one was there to give him stitches. And I think that that's illogical because that's like if somebody said to me, I'm going to punch you in the face. I have my two friends hold you. And then they walk away. I have to wait for them to come back and try and punch me before I strain against the friends who are holding me? That doesn't make any sense. They said we're going to give you stitches. He wouldn't get stitches. They say we're going to restrain you. The defendant's continually trying to get out of the situation where he's going to be made to get stitches. So I think – He wasn't restrained before the doctor came in? No. The testimony is clear at R30 that he was placed in a regular room. While the bed had restraints on it, the defendant was unrestrained for two hours, according to Mr. Cleen's testimony. So he wasn't out of control for the two hours enough that they had to restrain him. And then at R30 – or, sorry, R31 – R31, after the doctor comes in, he says he doesn't want the stitches. The nurse at that point tells Mr. Cleen, okay, now we need to restrain him. But what was he doing that made her want to restrain him? According to the testimony presented, she walked out of the room after the doctor – the doctor said there was a suggestion he was not going to get the stitches. So she walks out with the doctor and says, okay, now you need to restrain him. Now, he sits again for an hour and a half after this. But, again, I would liken it to someone saying, I'm going to punch you. I'm going to have these people hold you. Wait here. So you're saying he didn't go out of control after the doctor left and started flailing and yelling and carrying on? I mean, there is testimony that he was being belligerent, hassle-sacked throughout, from the time he gets there until, you know, this all ends. You know, here's the problem that I have. And I think it's a problem that you have conveying the information to me as well as counsel has conveying the information to me. Triad Court heard all of you. They made the determination as to credibility, didn't they? Yes. And they had that opportunity. How is it that we now reverse their ruling when we don't have all of the information that they have? Well, I'm not saying— This is our standard of review. The standard review for this is whether or not any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Correct. I mean, that's the standard. Correct. And I'm not suggesting—I mean, all the evidence that I've been citing is the state's witness. The Triad Court made the credibility determination and determined the state's witness, Kenneth Kleen, the security officer, is the more credible person. And I'm saying, that's fine. Believe Mr. Kleen. Believe everything he said. And when you believe everything he said, the hospital wasn't justified in giving this defendant medical treatment that he did not want, and the defendant was justified in, you know, trying to get out of this medical treatment that he had refused. So I guess—I mean, that's really the issue here is when we look at— and the state's talking a lot about, you know, evidence that could have been presented. I mean, the evidence that the state did present is that the hospital restrains Mr. Barsley after he refuses to get stitches. Because why? Again, the only testimony I have is Mr. Kleen's testimony that the doctor was in there, the doctor asked to give stitches, Mr. Barsley refused. At that point, the nurse came out and told Mr. Kleen, you need to restrain this patient. And there was no testimony that he was belligerent at that point and out of control? There was testimony that Mr. Barsley had been belligerent from the time he got to the hospital through this whole thing because of his intoxicated state. But again, the testimony was clear that no restraints were placed on him until after this incident with the doctor where he won't get the stitches. So I think that if we look at this—even taking the evidence in the light most favorable to the state, I'm saying believe their witness, but when you look at what their witness testified to, their witness raised a defense of self-defense, which the trial court clearly considered. I think at our time when he says there's no justification, but the trial court was wrong. There is justification. You can't restrain someone and make them get medical treatment, and that's the issue here. So we'd be asking this court to reverse the trial court and find that the defendant was not proven guilty beyond reasonable doubt based on the state's evidence. Thank you very much. We are in recess. No, we are adjourned. Thank you.